We'll call case number 19-7007, United States v. Blackbird. Good morning. May I please the court, counsel? My name is Lance Hopkins. I'm here today for Mr. Blackbird. Our contention is that the district court erred in finding that the subject minor was in the care, custody, or supervisory control of my client pursuant to sentencing guideline 2A 3.2 v. 1. Now, at the sentencing hearing, the district court judge asked the U.S. attorney, is there one iota of evidence that the defendant actually controlled any aspect of this young lady's life? Referring to the minor. The U.S. attorney responded that there is no evidence that my client controlled the legal functions of her life. Now, after she said that, the judge said, well, what about day-to-day functions such as pick up the plate off the coffee table and take it to the kitchen, go to bed, get off the phone with your friends, do your homework, anything like that at all. And the U.S. attorney said she was unaware of any facts that supported that particular assertion. So, by the government's own admission, there's really no evidence that my client ever was entrusted with care, control, or supervisory authority over this child. Now, counsel, I know you're getting right to the point that I've really personally struggled with this case in looking at what then the commentary to the guideline provides, and I'd just like your take and any authority where it just says, in determining whether to apply this enhancement, the court should look to the actual relationship that exists between the defendant and the minor and not simply to the legal status of the defendant-minor's relationship. Now, give me your take on what that means when you read that. Well, in that same application note, it says that, what it says is that this provision, this guideline provision is intended to have broad application, and it is to be applied whenever the minor is entrusted to the defendant. And I think the operative word here is entrusted. If the child is never entrusted to the defendant, then it doesn't come into play. That's sort of a loaded word, though, isn't it? Entrusted? The granddad lives in a trailer outside the house, comes in and out as he pleases, interacts with the grandkids as he pleases, has meals with the family, socializes. The legal guardians aren't afraid to leave the kids when he's there. They know he's coming in and out. I mean, can't you draw inference that they're entrusting the children to him? I do say there's, and if you look at the offense conduct summary in the case of my client being alone with any of the children without the custodial parent there outside of the offense conduct, I submit to the court that when he did go over there, their grandmother was always there, was generally there. Well, but your answer to the question is this man was already a sex offender. Yes, sir. And under the rules that he was obligated, he couldn't be in a trust, legally, he could not be in a trust position with his granddaughter. I mean, that would be a prohibition against that. And the word used is custody, care, and supervisory control. This is what, it shouldn't be bothering me as much as it is because of what he was convicted of and the fact that he was, but it does because words matter. Now, it doesn't say that custody care or supervisory or trusted position, legally, he couldn't have a trusted position, but then that's what takes me right back to that language where it says you should look at the actual relationship that exists between the defendant and the minor and not simply to the legal status. So the fact that he wasn't supposed to do that doesn't mean that he wasn't doing it. And that there's something, and that was your objection. You can't, you didn't show he was in the care, custody, or supervisory control. So I'm really struggling in trying to get a handle on this. Not that I'm in favor of where your client is, but I'm trying to look at it in a legal position based upon a good objection that you may have made. So again, I come back, what's the, what's that relationship? Give me a picture of that relationship. And then I might add to the government, you're going to get the same dose. Well, you know, the court's right. He, he, he, there's a reason the department of public services, the human services made him go out to the trailer because he legally couldn't be around him. And there really wasn't that much evidence that he had outside of being in the house that he had any kind of evidence. I mean, any kind of relationship with his child, special relationship. He was, you know, I think that that's the big thing about this case. We've got proximity here. He, he was there. He was around these children. All the time. He was around them all the time. He had breakfast there. He showered in there. I mean, the only time I guess he left the house was when he went out to go to bed at night. But this particular enhancement doesn't apply to people that are just around him. For this, this, this enhancement applies to caretakers, people that are in a special position. It doesn't apply to proximity. And that's why I really rely heavily on this case out of the Eighth Circuit of United States versus Blue, 255 Fed Third 609. Because I think that's very similar to what we've got here. In that case, the defendant was around the minor, was around the minor all the time. And, you know, in that case, the defendant described the minor as, as his grandson, looked at it toward him as his grandson. But the Eighth Circuit found that even with that, even with, in addition to that, in Blue, up to six, up until about six months before, I believe, I've got it written down here. Yeah, the mother and the minor child lived with a defendant for a year, up to six months prior to the offense conduct. So that's, that's similar to this case. But they said, even with that, this child was never entrusted to the defendant. The mother never transferred control or, or, or trust to the defendant. They, they, they. Let's not focus on that entrusted. To me, to me, that may be the, the, the key word. When the mother, somebody has to have done some entrusting. Right. Now. I agree with that. The daughter didn't do the entrusting. She didn't trust her father, grandfather, because she had already been abused by him. Right? So she didn't entrust her grandfather to take care of her. The mother obviously didn't entrust, because she had already left before the grandfather, I mean the grandmother, the grandmother didn't entrust. Because they had already left before the grandfather wandered into the house. Isn't that right? The grandmother did not entrust. What? The grandmother did not entrust. We agree. The granddaughter, I mean the other, the grandmother, she had left. Right? Yes, when the grandmother left, the girl was home by herself. So she did not entrust her to. And when the grandmother left, grandpa wasn't there in that home at that point. Right? That's correct. So we know the grandmother couldn't have entrusted because she had left before the grandpa even showed up. We know the daughter, the young girl, didn't entrust because she had already been abused by the guy and didn't trust him. So unless we can find somebody who, quote, entrusted. I just don't know. That's my argument. Nobody, that is my argument. Nobody did. Somehow it got diverted when, when the court said, well, he's like a normal grandpa. Well, I got to tell you, grandpas don't fit any more of a normal scheme than parents or children or anybody. I mean, there is no normal grandpa or normal grandma. We all have a different definition of normal. It varies the entire from the most atrocious to the, the saint. And I just, that standard has no meaning whatsoever. But that's not, it's not in the statute either. Well, yeah. And in fact, that's what bothers me about this. What we got here about this normal grandfather relationship, Carol Blackbird, my client's ex-wife, just made a statement to a law enforcement officer. They apparently had a normal, you know, grandfather, granddaughter relationship. What she said was he had a normal grandfather relationship with all the kids in the house. That's all that was said. And the government and the court take this as gospel is like, hey, normal grandfather relationship without any type of inquiry as to what Carol Blackbird meant by normal grandparent relationship. I mean, what might be normal to Carol Blackbird is, might not be normal to anybody else. It's just a blanket statement by Carol Blackbird. Hey, they seem to have a normal relationship. Are you arguing, or I think I'm answering my own question. You're arguing that the four, what was four point enhancement was the wrong enhancement, but you're not arguing that he should have had a two point enhancement. Is that right? Well, the district court implied, yeah, he shouldn't have had any enhancement on care, custody, or supervisory control. None. The child was never placed in his care, under his supervision. That enhancement does not apply. Well, and that's your argument. That's my argument. You're not arguing, though, that he wouldn't have been, isn't there another provision there that he would have been subject to it? I think that two point enhancement is outdated. I think in the past, it was a two point enhancement. It's now a four point now. The guidelines have been amended. What used to be a two point is now a four point. Now a four point. Right, because you notice in some of these cases that we cite, it was a two point enhancement at issue, but the guidelines have been amended since then to raise that from two to four. Okay. Well, my question then is, if let's just, for purposes of argument, say that you're correct, then what is he subject to, because he's not non-guilty. What's he subject to? I'm glad, I'm glad you asked that question. And here's why. My client, look, I don't, I'm not coming here denying that my client's not a dangerous person, not a sex offender, et cetera. He got a five level enhancement. It's kind of like a career offender provision. It's, it's a little bit different, but he got a five level enhancement by being a repeat sexual offender against minors. We didn't, we didn't object to that. Translate that into months. What's the difference that you're arguing that he, he got this many months, whereas if he was not properly sentenced under that enhancement, he is still going to get this many months on resentment. He got, the guideline range with the enhancement was 51 to 63 months. Without the enhancement, I believe it was 27 to 33 months. So it was about, we're talking, we're arguing about two years here, 20 months. Okay. Let me ask you this question in regards to the 10th circuit case, I believe of Chestnut is the way that that's pronounced, where this application was applied. And, and how do you get around that case? Well, I've got some notes here on that. I'd like to read to the court, because I anticipated this question and we talked about it in our brief. Okay. In Chazanow, the minor was left by the custodial parents in the temporary custody of all adults in the home, including the defendant Chazanow. The minor in the matter was, was not, was not, there was actual entrustment that went on in Chazanow that not, that did not happen here. There were multiple adults in the house and the, the, the child's parents works. And when they were gone, they, it was an understanding that the adults in the house watched the kids and the kids were, were told to mind the adults and to do what they said. We don't have anything like that here. I really submit, submit that Chazanow is not, it's inapplicable. It really is. I got 25 seconds. So I've pretty much said everything I want to. It's just, I just would like to add, I think it's important, you know, he got that, he already gets a five level enhancement by being a bad guy. I really think there's a knee jerk reaction to, if we see a bad guy, let's throw the leadership on top of him. I mean, let's throw the custody on top of him even though he's not in custody. Even though he's not a custodian, let's hit that, let's get him with that because he's a bad guy. I think that happened here. Thank you, counsel. Mr. Wilson. So do you, so do you have a problem here? We basically, what you, what the district court did was rely on it, make this application based on an inference of what a grandfather's, you know, control or interaction with the kid is. And, but you have a colloquy with the district court and the, and your colleague, I presume, where those types of controls and entrustment, things you would expect from an entrustment were expressly disavowed when, when your colleague was asked, you know, if he says, go to bed, does she have to go to bed? If he says, get the plate, does she get the plate? And your colleague says, that's, I've got no evidence of that. And so the district court says, well, okay, I'm going to, I'm going to make a,  a granddaughter relationship that there's entrustment. I mean, isn't that a problem when you've got an express disavowal of that kind of evidence by your colleague? The purpose of the enhancement, according to the commentary is to punish the abuse of the relationship. And although there was no specific evidence in what, what my co-counsel or colleague was saying was that there was no specific evidence in the record where they asked the grandmother, does he have the authority to do that? But what we do have here is a situation where you have a grandfather who is, who is not a grandfather. He's not a someone who they consider to be a grandfather or considers the kids to be their grandkids. You actually have the grandfather who, because of a prohibition, because of what DHS said, is actually using a different bedroom. In essence, he's sleeping outside in the trailer and he's using the rest of his daily activities inside the house. On the day of the offense, what is the relationship? And Judge Baldock, you asked that question of counsel. What is the relationship? What's the actual relationship between these two? What's going on that day? She's in the house alone. Grandmother's left her there. She's 15 years old. I understand that. So that's quite a bit different from a six or seven year old. Absolutely. And, and there is no statement by the grandmother ever saying, if I'm not around, you take care of this granddaughter. That is correct. But there was no word entrustment. There is no affirmative statement of anybody entrusting grandpa with this girl. And while you're thinking about this, I want to add, I want to, I want to add on to your question. And I'm all for piling on because I, uh, cause I'm doing the most dangerous thing. I got dictionary.com up right here. I'm looking at the word and trust, which says to charge or invest with a trust or responsibility. So someone had to charge or invest him with a trust or responsibility. And I want to pile on to that because the, the, it says if the minor is in the custody care and supervisory control, it doesn't say included entrustment. It gives you a specific basis for that. And we're all now all of a sudden going off on entrustment. And the entrustment language comes from the, from the application note, uh, that talks about this idea of the minor's entrusted to the defendant. But again, we get back to that same comment that says you have to look at the actual relationship. And I'm going to try to get to answer your question by looking at the relationship. The relationship on that day was, is that the young, the 15 year old is there alone. When there was no, there's nothing in the record that says grandmother told grandfather, you can't be in here when these kids are by themselves. Okay. What, what do you have to show that she is actually in his legal custody? I'm sorry. What do you have that shows that the young lady was number one in his legal custody? There's no court order or anything, giving her number two, what do you have that shows that she was in the care of this man? Number three, what do you show as being in the supervisory control of this man? Now he's given the title of a grandfather, but that's a very poor grandfather, but that's beside the point. I don't disagree with it. He's a very poor grandfather, but in fact, he is a grandfather. Yeah. But is he, is this young lady in his care? Is she in his care, custody or supervisor? As his, as his, as the granddaughter of the grandfather, she is, and he, he has a position of trust. And if you, in the case law talks about this idea of entrustment, and I know dictionary.com talks about this being trusted, but it also says that in a custodial position, when he is a person, the victim trust or to whom the victim is entrusted. It is an idea of that. There is a trust relationship between the two. Well, you agree. She doesn't trust him because when he propositioned her, she told him no thanks and texted grandma right then. But at the point he did that, that is true. However, again, going to the day of the crime, she's in the, she's in the kitchen. He walks in, she doesn't immediately run from the house. She sits down there. He joins her at the kitchen table. They begin talking about when you're going to get your first car, when you're gonna get your first job. They start watching videos together. He is taking advantage of the relationship. He's taking advantage of that trust relationship, which is what the purpose of this enhancement is to punish. The evil of violating that trust. Okay, I understand that argument and I also understand that we're dealing with, you know, a sexual abuse type of case here. The legal question is though, did the district court have the right to give him a four point enhancement on the basis of custody, care, supervisor, or in, you know, trust them, whatever you want. I can envision people thinking that, well, we're going soft on crime. That's not the issue. The issue is, has he been legally sentenced under this guideline, which specifies what it is? And that's where I'm coming from. I'm really bothered by that because, well, I'm just bothered by it. And that's why I told you you're going to be hit with the same thing. So you've got to convince me because that was the specific objection raised before the district court. Judge, you can't give me the four point enhancement because you can't show care, custody, supervisory control, and saying that there's entrustment in this case is a stretch. Your Honor, it's the government's position again, that when you look at what they said in, this court said in, and I'm not sure how you pronounce it, C-H-A-S-E-N-A-D-A. Chesnaugh. Chesnaugh. The focus of the guideline falls upon anyone who, for the purpose of abusive sexual contact, abuses even peripheral or transitory custody, care, or supervisory control of the victim. The enhancement recognizes the abuse itself is an additional evil in the offense. Yeah, and we agree with that. I mean, that is correct. And it's, again, it's the government's position. When you look at that, what is the actual relationship between these two people? So you, that's your, that's your burden. You had the burden for the, for getting the enhancement below. And your evidence was essentially one thing, a statement by the grandmother that he had a normal grandfatherly relationship with the kids. Right. That he is the, that's what that, that's the court's focus on. I mean, that's it. Was there anyone, did anyone testify, do anything to further define what that relationship is? Or are we expected to just use our own sort of common sense about what a grandfatherly relationship is? I go back to your honor to, to what took place that day. We have to look at what the actual relationship was. Right. But that, that, that cuts both ways. What happened that day cuts both ways. I could take either side of that one pretty, pretty easily. Well. And I got, and I got to, you got to, you got to be more than 50-50 to win. Right? I've got to have the, I've got to have a preponderance of the evidence. That's exactly correct. And it's the government's position that the fact that she was in fact his granddaughter, that he was the grandfather and that that was the relationship that they were portraying that day, that he took advantage of that relationship. Where the wheels came off the bus was talking about grandfathers and that's not, the word grandfather doesn't appear in these, in this guideline or the notes. We've already talked about the notes, the word entrusted. And I ask is, did anybody entrust anything to this grandpa? And everybody said, no, nobody did. Then we go to the guideline itself, custody. Did anybody, was his grandfather in the custody? Did he have custody of the girl? And we know legally he couldn't. How about care? The girl was taking care of herself, feeding herself. No suggestion that he was caring for her. What about supervisory control? The government admitted that he couldn't force her to take her plate over to the sink or anything else. So it seems to me we've almost got affirmative negation here of control and care. And the word custody, I think legally is such that he couldn't have had custody. That's why he's sleeping in the other apartment. So, I mean, I, I, I think it's down to words. I mean, I agree with you that grandfathers might carry an aura of some authority, but I don't see anything in this guideline that says control by virtue of your familial relationship with the victim. That might invoke grandfather being enough, just being a grandpa. But it uses words that are not related specifically to grandpa. Custody, care, and control. And I just got to say, I don't see it here. I mean, what is there any, do you have any specific evidence of custody, specific evidence of care, or specific evidence of control in this record? Your Honor, based upon the facts in this particular case, my colleague at the sentencing hearing said that there was no specific evidence that said that he had the authority to direct her to put her dishes in the sink. Nothing about control. How about care? Other than the fact that he lived next door and came into the house. Yeah, but that wasn't care, just the fact that he lived next door. Yeah. I'm sorry. And then how about custody? Well, custody is more of a legal question, and we know he can't have done that. DHS said no, you can't stay in the house. Yeah. That is correct. Okay. Now we have those facts, and Judge Ebell has been talking about it. So then we go to the application. It says in determining whether or not to apply this enhancement, the court should look to the actual relationship that existed between the defendant and the minor, and not simply to the legal status of the defendant-minor relationship. Now, that's the comment that they're trying to get us to say what, because with the facts that we've established, we're talking here. So now I'm supposed to look at the actual relationship that existed between the defendant and the minor, and not simply the legal status. Now, what's the actual relationship here that would establish us applying implication that it was within the custody, care, and supervisory control of the grandfather? Because that's what they're telling us we've got to do, or should do. I'm not necessarily agreeing with that, but that's what it said. And again, it is the government's position that what are we trying to punish you? What are we trying? What is this enhancement? What is the purpose of it? The purpose of it is to keep people who have a special relationship with a victim to seize upon that and abuse that relationship. And what's the special relationship in this case? And again, I go back to your honor to the fact that he is in fact, he's not a surrogate grandfather. He, and I know the statute doesn't, the guideline doesn't say a grandfather, but it does say a person who is in a position of care, custody, or control. As a grandfather who lives in the same, basically lives in the same house, there is, and the court talked about it in inference, and I think that's what the court made, was an inference that the fact that he, even though he sleeps outside, he stays in the house all the time, that there's an inference that he has that ability to control. You know, maybe, maybe you should go back to the sentencing commission and have them amend this to use the word special relationship. Well, maybe we can do that at some point, but however, based upon this application note, based upon the application note, that's what the government's argument that what is the actual relationship? Okay. I appreciate it, counsel. You're, you're out of time. Appreciate that. All right. The case will be submitted. Counsel are excused.